# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TIFFANY CAREY and MELISSA MULLINS,<br><br>    *Plaintiff/Relators*,<br><br>v.<br><br>DALLAS NEPHROLOGY ASSOCIATES,<br><br><br>    *Defendant.* | Civil Action No. 4:19-CV-711-SDJ<br><br><br><br>**RELATORS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS [DOC. NO. 25]** |

**SBAITI & COMPANY PLLC**

*/s/ Kevin Colquitt*              
**Mazin A. Sbaiti**
Texas Bar No. 24058096
mas@sbaitilaw.com
**Kevin N. Colquitt**
Texas Bar No. 24072047
knc@sbaitilaw.com
**Griffin S. Rubin**
Texas Bar No. 24121809
gsr@sbaitilaw.com
2200 Ross Avenue, Suite 4900
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 853-4367

**COUNSEL FOR RELATORS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

INTRODUCTION ...........................................................................................................1

I.      LEGAL STANDARD ...........................................................................................2

        A.      Motion to Dismiss............................................................................................2

        B.      Medicare Prohibits Providers from Routinely Waiving the Payment
                of Copayments and Deductible........................................................................2

II.     RELATORS' ALLEGATIONS ...........................................................................4

III.    ARGUMENTS & AUTHORITIES .....................................................................5

        A.      The Complaint Pleads All Elements of an FCA Claim.......................................5

                1.      DNA Submitted False Claims to Medicare ...............................................6

                2.      DNA Had the Requisite Scienter ................................................................6

                3.      DNA's Misrepresentations of Its Actual Charges Were
                        Material ..........................................................................................................7

                4.      DNA's Overinflated Claims Caused Medicare to Pay
                        DNA Money ..................................................................................................8

        B.      The Complaint Satisfies the Fifth Circuit's Rule 9(b)
                Particularity Requirements.................................................................................9

IV.     DNA'S IMPROPER ARGUMENT .....................................................................12

        A.      The Court Should Disregard DNA's Recitation of Facts
                Outside the Complaint........................................................................................12

        B.      The Government's Declination Has No Bearing on the
                Merits of This Case ............................................................................................13

V.      REQUESTED RELIEF.........................................................................................14

**TABLE OF AUTHORITIES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................13

*C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*,
    838 F.3d 655 (5th Cir. 2016) ...................................................................................12

*Flanagan v. Bahal*,
    No 12-2216, 2015 U.S. Dist. LEXIS 171292 (D.N.J. Sec. 22, 2015)........................6

*George v. SI Grp., Inc.*,
    No. 20-40427, 2022 U.S. App. LEXIS 15410 (5th Cir. June 3, 2022) ......................2

*Muhammad v. Dall. Cnty. Cmty. Supervision & Corrs. Dep't*,
    479 F.3d 377 (5th Cir. 2007) .....................................................................................2

*Providence Title Co. v. Truly Title, Inc.*,
    No. 4:21-CV-147, 2022 U.S. Dist. LEXIS 61991
    (E.D. Tex. Mar. 29, 2022)........................................................................................14

*Pureshield, Inc. v. Allied Bioscience, Inc.*,
    No. 4:20-CV-734, 2021 U.S. Dist. LEXIS 188698
    (E.D. Tex. Sept. 30, 2021) .......................................................................................15

*Raj v. La. State Univ.*,
    714 F.3d 322 (5th Cir. 2013) .....................................................................................2

*Roe v. Patterson*,
    No. 4:19-CV-179, 2022 U.S. Dist. LEXIS 39730
    (E.D. Tex. Mar. 7, 2022)..........................................................................................15

*Sewell v. Monroe City Sch. Bd.*,
    974 F.3d 577 (5th Cir. 2020) .....................................................................................2

*United States ex rel. Atkins v. McInteer*,
    470 F.3d 1350 (11th Cir. 2006) ...............................................................................13

*United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*,
    104 F.3d 1453 (4th Cir. 1997) .................................................................................13

*United States ex rel. Chandler v. Cook Cty.*,
    277 F.3d 969 (7th Cir. 2002) ...................................................................................13

*United States ex rel. Farmer v. City of Houston*,
  523 F.3d 333 (5th Cir. 2008) ..................................................................................7

*United States ex rel. Goodman v. Arriva Med., LLC*,
  No. 3:13-cv-0760, 2020 U.S. Dist. LEXIS 50783
  (M.D. Tenn. Mar. 24, 2020) ...................................................................................9

*United States ex rel. Grubbs v. Ravikumar Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ..........................................................................9-10, 11

*United States ex rel. Health Choice All., L.L.C. v. Eli Lilly & Co.,*
  4 F.4th 225 (U.S. 5th Cir. 2021) .........................................................................13

*United States ex rel. Integra Med. Analytics, L.L.C. v. Baylor Scott & White Health*,
  816 F. App'x 892 (5th Cir. 2020) ....................................................................... 5-6

*United States ex rel. King v. Solvay Pharms., Inc.,*
  871 F.3d 318 (5th Cir. 2017) ..................................................................................6

*United States ex rel. Lemon v. Nurses To Go, Inc.*,
  924 F.3d 155 (5th Cir. 2019) ..................................................................................8

*United States ex rel. Musachia v. Pernix Therapeutics, LLC*,
  No. 2:18-cv-01445, 2021 WL 2826429 (N.D. Ala. June 7, 2021)...........................3

*United States ex rel. Roshan v. E. Tex. Med. Ctr.*,
  No. 6:16-cv-01128-JDK, 2020 U.S. Dist. LEXIS 252092
  (E.D. Tex. Nov. 24, 2020)................................................................................9, 11

*United States ex rel. Sharp v. E. Okla. Orthopedic Ctr.*,
  Case No. 05-CV-572, 2009 U.S. Dist. LEXIS 15988
  (E.D. Okla. Feb. 27, 2009) .....................................................................................6

*United States ex rel. Steury v. Cardinal Health, Inc.*,
  625 F.3d 262 (5th Cir. 2010) ..................................................................................9

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir. 1997) ............................................................................ 10-11

*United States ex rel. Williams v. Bell Helicopter Textron Inc.*,
  417 F.3d 450 (5th Cir. 2005) ................................................................................13

*United States ex rel. Woodard v. DaVita, Inc.*,
  No. 1:05-CV-227, 2011 U.S. Dist. LEXIS 153430
  (E.D. Tex. May 9, 2011) ........................................................................................10

*Universal Health Servs. v. United States*,
579 U.S. 176 (2016) ........................................................................................7

*Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*,
676 F.3d 455 (5th Cir. 2012) ..................................................................... 14-15

*Whiddon v. Chase Home Fin., LLC*,
666 F. Supp. 2d 681 (E.D. Tex. 2009) ...............................................................7

*Winzer v. Kaufman Cty.*,
916 F.3d 464 (5th Cir. 2019) ........................................................................15

**Rules**

FED. R. CIV. P. 9(b) ...........................................................................................7

FED. R. CIV. P. 12(b)(6) .............................................................................2, 5, 8

FED. R. CIV. P. 15(a)(2) ...................................................................................14

**Codes & Statutes**

42 C.F.R. § 414.21 .............................................................................................3

42 C.F.R. § 1001.952(h)(5)(iv) ............................................................................3

31 U.S.C. § 3729 ............................................................................................6, 7

31 U.S.C. § 3730(c)(2)(A) ...................................................................................

**Other**

26 RICHARD A. LORD, WILLISTON ON CONTRACTS § 69:12 (4th ed. 2003) ...................7

Medicare Claims Processing Manual, Ch. 23, at § 80.8 ..........................................2

Medicare Provider Reimbursement Manual, Section 310 ........................................11

Publication of OIG Special Fraud Alerts ("Fraud Alert"),
94 Fed. Reg. 31157 (Dec. 19, 1994) ............................................................ 3, 7-8

**INTRODUCTION**

Relators Tiffany Carey and Melissa Mullins (collectively, "Relators") are former billing and collections supervisors at Defendant Dallas Nephrology Associates ("DNA"). In the course of their employment, Relators learned that DNA routinely waived the collection of copayments and deductibles from Medicare patients, and DNA routinely wrote off millions of dollars of these collections from their books. When Relators discussed their concern with their supervisor, DNA's Director of Revenue Cycle, that this practice violated federal law, they were told that DNA's senior management was fully aware of the improper conduct—and had been for some time—but refused to take the steps necessary to bring DNA into compliance with the law.

Medicare reimburses providers, such as DNA, based on their "actual charges" to Medicare beneficiaries. The actual charge is determined by the amount that a provider reasonably anticipates collecting (including copayments and deductibles from the patient) in total for the service. A billed amount that is not reasonably related to an expectation of payment is not considered the actual charge for the purpose of processing a Medicare claim. If a provider does not have a reasonable expectation of collecting copayments and deductibles from a patient, that amount should not be included in its actual charge on its claim to Medicare.

Because DNA routinely failed to collect copayments and deductibles from its patients, it had no reasonable expectation of collecting them, and these payments should not have been included in DNA's actual charges to Medicare. But include them DNA did—DNA overstated its actual charges to Medicare by tens of millions of dollars and, as a result, received millions of dollars of overpayments from the Medicare program. This action under the False Claims Act is intended to recover those millions of dollars of overpayments on behalf of the Medicare program and federal taxpayers.

**I.**

**LEGAL STANDARD**

A.    MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to plead "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff." *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013). A claim is facially plausible if its "factual content [accepted as true] allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A court may not use Rule 12(b)(6) to dismiss a claim unless the plaintiff 'would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint.'" *United States ex rel. Roshan v. E. Tex. Med. Ctr.*, No. 6:16-cv-01128-JDK, 2020 U.S. Dist. LEXIS 252092, at *7 (E.D. Tex. Nov. 24, 2020) (quoting *Muhammad v. Dall. Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007)).

"[A] Rule 12(b)(6) motion tests the sufficiency of the pleadings, not the merits of the case…That is why the well-pleaded factual allegations of a complaint must be taken as true and viewed in the light most favorable to the plaintiff." *George v. SI Grp., Inc.*, No. 20-40427, 2022 U.S. App. LEXIS 15410, at * 11 (5th Cir. June 3, 2022) (citing *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020)).

B.    MEDICARE PROHIBITS PROVIDERS FROM ROUTINELY WAIVING THE PAYMENT OF COPAYMENTS AND DEDUCTIBLE.

"The reasonable charge determination for a covered service should be based on the actual charge for the service when that charge is no higher than the applicable customary and prevailing charges." MEDICARE CLAIMS PROCESSING MANUAL, Ch. 23, at § 80.8. "Medicare payment [to

physicians] is based on the lesser of the actual charge or the applicable fee schedule amount." 42 C.F.R. § 414.21. "Deductible and coinsurance amounts are taken into account (included) in determining the reasonable charge for a service or item. In this regard, a billed amount that is not reasonably related to an expectation of payment is not considered the actual charge for the purpose of processing a claim or for the purpose of determining customary charges." MEDICARE CLAIMS PROCESS MANUAL, Ch. 23, at § 80.8.1. "For example, if a supplier claims that its charge for a piece of equipment is $100, but routinely waives the copayment, the 'actual' charge is $80. Medicare should be paying 80 percent of $80 (or $64), rather than 80 percent of $100 (or $80). As a result of the supplier's misrepresentation, the Medicare program is paying $16 more than it should for this item." Publication of OIG Special Fraud Alerts ("Fraud Alert"), 94 Fed. Reg. 31157 (Dec. 19, 1994). Thus, a provider's routine failure to collect copayments and deductibles renders its claims to Medicare facially false under the FCA because such claims misrepresent the provider's actual charges. "Whoever submits a false claim to the Medicare program (for example, a claim misrepresents an actual charge) may be subject to . . . civil . . . liability for making false statements and/or submitting false claims to the Government." *Id.* (citing 31 U.S.C. § 3729).

Additionally, the routine waiver of patient responsibility constitutes remuneration under the Anti-Kickback Statute ("AKS"). And while the AKS provides a safe harbor for certain discounts, this protection does not extend to a reduction in price offered to a beneficiary (such as "[a] routine reduction or waiver of any coinsurance or deductible amount owed by a program beneficiary"). 42 C.F.R. § 1001.952(h)(5)(iv). As admitted by Defendant, a violation of the AKS "is a *per se* violation of the FCA." Def.'s Mot. to Dismiss Relator's Compl. & Mem. of Law in Support (Doc. No. 25) (the "MTD") at 5 (citing *United States ex rel. Musachia v. Pernix Therapeutics, LLC*, No. 2:18-cv-01445, 2021 WL 2826429, at *1 (N.D. Ala. June 7, 2021)).

An exception to the "prohibition against waiving copayments and deductibles is that providers . . . may forgive the copayment in consideration of a particular patient's financial hardship." Fraud Alert, 94 Fed. Reg. 31157. However, this exception "should be used occasionally to address the special financial needs of a particular patient," and "[e]xcept in such special cases, a good faith effort to collect deductibles and copayments must be made." *Id.*

## II.

## RELATORS' ALLEGATIONS

Defendant Dallas Nephrology Associates implemented a policy of making minimal efforts to collect its patients' copayments. Complaint (Doc. No. 1) ("Compl.") at ¶ 36. If a patient did not render payment at the time of service, DNA's collection efforts were limited to sending automated billing statements. *Id*. DNA made no further attempts to collect the copayments and deductible, such as by utilizing a professional collections agency. *Id.*

DNA's policy resulted in the accumulation of over ten million dollars of uncollected copays and deductibles in accounts receivable, which DNA would periodically write off its books. *Id.* at ¶ 37. For example, on February 27, 2019, DNA wrote off millions of dollars in accounts receivable. *Id.* DNA made no individualized determination of financial hardship in the vast majority of these cases. *Id.* at ¶ 36.

DNA utilized Allscripts practice management software. *Id.* at ¶ 38. In 2019, two representatives from Allscripts were onsite at DNA's headquarters to provide software training. *Id.* In conversations with the Relators, the Allscript representatives expressed shock at how much outstanding accounts receivable from uncollected co-pays and deductibles DNA held on its books, which Relators were told was approximately $11 million at that time. *Id.* The Allscript representatives were dismayed because the sheer number of different accounts where patient

responsibility was uncollected interfered with the Allscripts software's ability to run accounts-receivable reports. *Id.* The Allscripts representatives told the Relators that neither of them had ever seen an account with anywhere near the same volume of accounts receivable as DNA. *Id.*

As an example of DNA's routine waiver of copayments and deductibles, the Complaint identifies 22 Medicare claims for which DNA misrepresented its "actual charge" because it wrote off the patient responsibility as part of its routine waiver policy. *Id.* at ¶ 39. For each of these claims, the Complaint identifies the date Medicare paid the claim, the amount of the Medicare payment, the date DNA wrote off the patient responsibility, and the amount of the write-off. *Id.*

Relators Tiffany Carey and Melissa Mullins worked at DNA as a billing supervisor and collection's supervisor, respectively. *Id.* ¶¶ 5–6. Relators raised their concerns about DNA's improper waiver of the patient responsibility to DNA's Director of Revenue Cycle, who (1) acknowledged that the conduct was improper and (2) told Relators that senior management had been well aware of the issue for quite some time but refused to take the necessary steps to bring DNA into compliance with the law. *Id.* at ¶ 41.

**III.**

**ARGUMENTS & AUTHORITIES**

A.      THE COMPLAINT PLEADS ALL ELEMENTS OF AN FCA CLAIM

To survive a Rule 12(b)(6) motion to dismiss, an FCA claim "must plead the following four elements: (1) 'a false statement or fraudulent course of conduct;' (2) that was 'made or carried out with the requisite scienter;' (3) 'that was material;' and (4) 'that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *United States ex rel. Integra*

*Med. Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 896 (5th Cir. 2020) (quoting *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 324 (5th Cir. 2017)). These elements are the same for a claim for false presentment under 31 U.S.C. § 3729(a)(1) and a false record/statement claim under 31 U.S.C. § 3729(a)(2). *See United States ex rel Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (delineating that the elements for false presentment and false record/statement are the same).

1.      *DNA Submitted False Claims to Medicare.*

"[A] billed amount that is not reasonably related to an expectation of payment is not considered the actual charge for the purpose of processing a claim or for the purpose of determining customary charges." MEDICARE CLAIMS PROCESS MANUAL, Ch. 23, at § 80.8.1. Compl. at ¶¶ 46, 51. Here, the Complaint alleges that DNA routinely waived copayments, which resulted in DNA misrepresenting its actual charges on its claims to Medicare, which resulted in a false claim or statement to the Government. "The 'false claim' occurs . . . because a 'provider, practitioner, or supplier who routinely waives Medicare copayments or deductible is misstating its actual charge.'" *United States ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, No. 05-CV-572, 2009 U.S. Dist. LEXIS 15989, at *74–76 (E.D. Okla. Feb. 27, 2009) (determining that the submission of a claim for which copay was waived is facially false); *see also Flanagan v. Bahal*, No 12-cv-2216, 2015 U.S. Dist. LEXIS 171292, at *24 (D.N.J. Sept. 22, 2015) (finding allegations that physician routinely waived Medicare copayments stated a claim under the FCA).

2.      *DNA Had the Requisite Scienter*

"The scienter requirement comes from [the FCA's] definition of the terms 'knowing' and 'knowingly'" *Longhi*, 575 F.3d at 468. "[T]he terms 'knowing' and 'knowingly' . . . mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in

deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). Specific intent to defraud is not a necessary element of a claim under the FCA. *Longhi*, 575 F.3d at 468 (citing *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008)). Further, under Rule 9(b), the scienter element "may be alleged generally." Fed. R. Civ. P. 9(b); *see Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 691 (E.D. Tex. 2009).

Here the Complaint alleges that DNA's Director of Revenue Cycle was aware that DNA was improperly waiving copayments. Compl. at ¶ 41. She reported to Relators that "DNA's senior management had been well aware of the issue for quite some time, but refused to take the necessary steps to bring DNA into compliance with the law." *Id.* Accepted as true, these allegations provide a plausible basis that Defendant had actual knowledge that they were misrepresenting the actual costs of its services to Medicare.

3.      *DNA's Misrepresentations of Its Actual Charges Were Material*

Under the FCA, material means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). As explained by the Supreme Court, "materiality 'looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Universal Health Servs. v. United States*, 579 U.S. 176, 193 (2016) (brackets omitted) (quoting 26 RICHARD A. LORD, WILLISTON ON CONTRACTS § 69:12, p. 549 (4th ed. 2003)).

As explained by the OIG, a provider's misrepresentation of its actual charge—resulting from the routine waiver of copayments—causes Medicare to pay more than it should. Fraud Alert, 94 Fed. Reg. 31157 ("For example, if a supplier claims that its charge for a piece of equipment is $100, but routinely waives the copayment, the actual charge is $80. Medicare should be paying 80

percent of $80 (or $64), rather than 80 percent of $100 (or $80). As a result of the supplier's

misrepresentation, the Medicare program is paying $16 more than it should for this item."). The

OIG further expounded:

> Whoever submits a false claim to the Medicare program (for example, a claim
> misrepresents an actual charge) may be subject to criminal, civil or
> administrative liability for making false statements and/or submitting false
> claims to the Government. 18 U.S.C. 287 and 1001; 31 U.S.C. 3729; 42 CFR
> 1320a-7a). Penalties can include imprisonment, criminal fines, civil damages
> and forfeitures, civil monetary penalties and exclusion from Medicare and the
> State health care programs.

*Id.*

Additionally, the Complaint identifies eight separate instances in which the Government

sought to recover money paid to providers who routinely waived the copays and deductibles.

Compl. at ¶ 35. These allegations are sufficient to satisfy the materiality prong on a Rule 12(b)(6)

motion. *See United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 162 (5th Cir. 2019)

(finding allegations "that the U.S. Department of Health and Human Service's Office of Inspector

General has taken criminal and civil enforcement actions against other hospice providers that

submitted bills for ineligible services or patients, including situations where the provider failed to

conduct appropriate certifications" sufficiently raised a reasonable inference of materiality).

4.      *DNA's Overinflated Claims Caused Medicare to Pay DNA Money*

The Complaint alleges that the DNA submitted inflated claims to Medicare for which they

improperly included the waived copay amounts in the actual charge, thereby causing Medicare to

pay DNA money. Compl. at ¶¶ 46–47, 51–52. Further, the Complaint identifies 22 specific claims

for which Medicare paid DNA money for claims where copays and deductibles were waived. *Id.*

at ¶ 39.  DNA has not challenged the sufficiency of this element, and there is no dispute that

Relators have alleged that DNA's claims to Medicare caused Medicare to pay DNA money.

B.    THE COMPLAINT SATISFIES THE FIFTH CIRCUIT'S RULE 9(B) PARTICULARITY
       REQUIREMENTS

A complaint under the False Claims Act ("FCA") must also satisfy Rule 9(b)'s heightened pleading standard. *E.g. United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Under Rule 9(b), FCA complaints "must state with particularity the circumstances constituting fraud or mistake." Commonly, courts interpret Rule 9(b) to the party alleging fraud to plead the "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010)).

"'Rule 9(b)'s ultimate meaning is context specific,' and pleadings may survive 'without including all the details of any single court-articulated standard.'" *Roshan*, 2020 U.S. Dist. LEXIS 252092, at *7 (quoting *Grubbs*, 565 F.3d at 188); *see also United States ex rel. Goodman v. Arriva Med., LLC*, No. 3:13-cv-0760, 2020 U.S. Dist. LEXIS 50783, at *11 (M.D. Tenn. Mar. 24, 2020) ("[Rule 9(b)] should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.")

The FCA has different elements of proof than securities fraud and common law fraud; accordingly, a different Rule 9(b) standard applies. .The FCA *"protects* the Treasury from monetary injury"; "the statute is remedial and exposes even unsuccessful false claims to liability." *Grubbs*, 565 F.3d at 189. Unlike common-law or securities fraud, the FCA "lacks the elements of reliance and damages." *Id.* Thus, "the contents of the bill are less significant because a complaint need not allege the not allege that the Government relied on or was damaged by the false claim." *Id*. Therefore, Rule 9(b)'s particularity requirements for an FCA claim "are not on the same plane" as the standards for common-law or securities fraud. *Id*. In other words, if a complaint under the

FCA does not "allege the details of an actually submitted false claim, it may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

Here, Relators satisfy the Fifth Circuit's requirements. First, the Complaint identifies 22 instances for six different patients where DNA submitted claims to Medicare for patients whom DNA routinely waived copayments or deductibles without making an individualized determination of financial hardship or exhausting reasonable collection efforts. In the Complaint, each of these 22 instances is associated with a specific patient, a specific account number, a specific amount of Medicare payment, a specific amount that was written off, and the amount of the write-off. Compl. at ¶ 39. The Complaint also alleges that DNA routinely wrote off millions of dollars in copayments and provides dates when copayments were written off. *Id.* at ¶¶ 37 & 39. Further the Complaint alleges that DNA did not make attempts to collect other than using automated billing statements and almost never made individualized determinations of financial hardship. *Id.* at ¶ 36. In other words, the Complaint provides the specifics of a scheme to defraud Medicare. Further, the Complaint also alleges the amount and date of each Medicare payment for each of the specific 22 instances, which provides reliable indicia that claims were submitted to Medicare. In combination, this satisfies the Fifth Circuit's standard articulated in *Grubbs*. *See United States ex rel. Woodard v. DaVita, Inc.*, No. 1:05-CV-227, 2011 U.S. Dist. LEXIS 153430, at *30 (E.D. Tex. May 9, 2011) ("[A] plaintiff may satisfy the FCA's scienter requirement with general allegations, as long as he sets forth specific facts supporting an inference of fraud.").

Defendant nevertheless demands more. Relying on old Fifth Circuit precedent, it insists that "the 'who, what, where, when, and how' of the fraudulent claim or conduct must be specifically identified. MTD at 7 (citing *United States ex rel. Thompson v. Columbia/HCA*

*Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Times have changed, and the law has evolved. Today, *Thompson* is no longer a straight jacket, and courts in the Fifth Circuit follow *Grubbs*'s relaxed standard when *Thompson* is not met. *See, e.g. Roshan*, 2020 U.S. Dist. LEXIS 252092, at *6–7.

Defendants also cite to Section 310 of the Medicare Provider Reimbursement Manual as proof that Relators' allegations are inadequate. But Defendants' argument fails for several reasons.

*First*, Medicare's manuals also state that "a billed amount that is not reasonably related to an expectation of payment is not considered the "actual" charge for the purpose of processing a claim or for the purpose of determining customary charges." MEDICARE CLAIMS PROCESS MANUAL, Ch. 23, at § 80.8.1. The allegations in the Complaint stating that DNA routinely waived copays and deductibles and routinely wrote off millions of dollars in uncollected debt provide a plausible basis that DNA did not have a reasonable expectation of collecting its claimed "actual charge" made to Medicare. Whether DNA had a reasonable expectation is a fact issue that should be determined on summary judgment or at trial—not at the pleadings stage.

*Second,* Defendant misinterprets Section 310. Section 310 does not stand for the proposition that subsequent automated billing alone constitutes a reasonable collection effort. Instead, subsequent billing is one factor out of many others, include the use of collection letters and telephone calls, which the Complaint alleges were not made ("DNA makes minimal collection efforts, limited to sending automated billing statements"). Compl. at ¶ 36. Given the Complaint alleges that DNA systemically wrote off millions of dollars in unpaid copays and deductibles over the years, it is plausible that DNA automated billing system did not "constitute a genuine, rather than a token, collection effort."

*Finally*, Defendant complains that Relators did not allege that DNA treated Medicare patients differently than non-Medicare patients. But under the plain language of Section 310, similar treatment is necessary for determination of reasonable collection efforts, but it is not sufficient on its own. Even if DNA treated Medicare and non-Medicare patients identically, it is still plausible that the collection efforts for both were not genuine, but token efforts instead.

**IV.**

**DNA'S IMPROPER ARGUMENT**

A.    THE COURT SHOULD DISREGARD DNA'S RECITATION OF FACTS OUTSIDE THE COMPLAINT

"[A] Rule 12(b)(6) motion typically cannot rely on evidence outside the complaint." *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016). Ignoring this rule, DNA's attempts to persuade the Court's decision through the introduction of "facts" not in the Complaint. DNA claims that it "authorized its attorneys to provide Relators' counsel with the content of interview summaries and affidavits and declarations demonstrating that the factual underpinnings of Relators' Complaint are inaccurate and misinformed." MTD at 2. Regardless of whether DNA granted such authorization, no affidavits or declarations were produced to Relator's counsel. What was produced was a one-side recitation of DNA's "results" from its internal investigation and an analysis of the Complaint, which was chock full of conclusory statements and hedging language, and which had the opposite of the desired effect because it convinced Relators' counsel that DNA is hiding something. It is peculiar that DNA seeks to use this communication offensively in its motion to dismiss given that it was produced subject to the Rule 408 settlement privilege. Regardless, DNA's reliance on facts outside of the Complaint is improper.

**B.** THE GOVERNMENT'S DECLINATION HAS NO BEARING ON THE MERITS OF THIS CASE

Defendant also implies that the United States' failure to intervene was merits based and a result of the Defendant's attorney's presentation of evidence and arguments to the United States Attorney's Office. The Court should not interpret the United States' decision to decline intervention as an indication that the Relators' allegations lack merit. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 455 (5th Cir. 2005) (The FCA "does not require the government to proceed if its investigation yields a meritorious claim. Indeed, absent any obligation to the contrary, it may opt out for any number of reasons") (quoting *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1458 (4th Cir. 1997).); *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006) ("We do not assume that in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrong doing insufficient or the *qui tam* relator's allegations for fraud to be without merit. In any given case, the government may have a host of reasons for not pursuing a claim."); *United States ex rel. Chandler v. Cook Cty*., 277 F.3d 969, 974 n.5 (7th Cir. 2002) ("There is no reason to presume that a decision by the Justice Department not to assume control of the suit is a commentary on its merits. The Justice Department may have myriad reasons for permitting the private suit to go forward including limited prosecutorial resources and confidence in the relator's attorney.") Further, the False Claims Act grants the Government the right to dismiss the Relator's action. 31 U.S.C. § 3730(c)(2)(A); s*ee also United States ex rel. Health Choice All., L.L.C. v. Eli Lilly & Co.*, 4 F.4th 255, 263 (U.S. 5th Cir. 2021). Notably, the Government has not sought dismissal of this action.

# V,

## REQUESTED RELIEF

Relators respectfully request that the Court deny Defendant's motion to dismiss.

In the event the Court determines that the operative complaint is in any way deficient, Relators respectfully request an opportunity to cure via amendment. For example, Relators can add the following details, among many others, depending on any deficiency that might be identified by the Court:

- o The identity of DNA's Director of Revenue Cycle, along with details of her conversations with DNA upper management regarding the failure to collect copayments and deductibles;

- o Details of conversations between DNA's Director of Revenue Cycle and physicians at DNA stating that if DNA did not waive patient copays and deductibles, then it might lose business, which further supports the allegations of improper remuneration under the AKS;

- o Details regarding the volume of Medicare copayments and deductibles that DNA wrote off, including that from 2014–2020, DNA failed to collect $17 million out of $19 million owed personally by Medicare patients, which resulted in over $13 million in Medicare overpayments to DNA.

The Federal Rules of Civil Procedure direct courts to "freely give leave" for parties to amend their pleadings "when justice so requires." FED. R. CIV. P. 15(a)(2). "This rule 'evinces a bias in favor of granting leave to amend,'" and "[c]ourts 'must have a substantial reason to deny a request for leave to amend.'" *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147, 2022 U.S. Dist. LEXIS 61991, at \*13 (E.D. Tex. Mar. 29, 2022) (Jordan, J.) (citation omitted). "When considering whether to allow amendment, a court should consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455,

466 (5th Cir. 2012) (citation omitted). The decision to grant or deny leave to amend lies within the Court's discretion. *See Winzer v. Kaufman Cty.*, 916 F.3d 464, 471 (5th Cir. 2019).

Under this liberal standard, Relators respectfully request for the Court to grant leave to amend if the Court finds any deficiency in the operative complaint. None of the factors courts consider in light of a request for leave to amend are present—undue delay will not ensue, Relators make such request in good faith, this request for leave is the first made by Relators in this case, and undue prejudice will not inure to Defendant. Furthermore, amendment will not be futile because Relators, as stated above, are able to readily add further detail to its pleadings. *See Roe v. Patterson*, No. 4:19-CV-179, 2022 U.S. Dist. LEXIS 39730, at \*37–38 (E.D. Tex. Mar. 7, 2022). Accordingly, Relators respectfully urge the Court to grant leave to amend in such instance. *See Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734, 2021 U.S. Dist. LEXIS 188698, at \*21 n.5 (E.D. Tex. Sept. 30, 2021) (Jordan, J.) ("Unless it appears that amendment would be futile, 'a court should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted.'" (citation omitted)).

Dated: June 20, 2022

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Kevin Colquitt*  
**Mazin A. Sbaiti**  
Texas Bar No. 24058096  
mas@sbaitilaw.com  
**Kevin N. Colquitt**  
Texas Bar No. 24072047  
knc@sbaitilaw.com  
**Griffin S. Rubin**  
Texas Bar No. 24121809  
gsr@sbaitilaw.com  
2200 Ross Avenue, Suite 4900  
Dallas, Texas 75201  
T: (214) 432-2899  
F: (214) 853-4367

**COUNSEL FOR RELATORS**